716 So.2d 795 (1998)
Freeman W. BARNER, Jr., Appellant/Cross-Appellee,
v.
Julia P. BARNER, Appellee/Cross-Appellant.
No. 96-3305.
District Court of Appeal of Florida, Fourth District.
July 1, 1998.
Rehearing Denied September 9, 1998.
*796 Frederick M. Dahlmeier and Freeman W. Barner, Jr. of Cromwell, Pfaffenberger, Dahlmeier, Barner & Griffin, North Palm Beach, and John Beranek of Ausley & McMullen, Tallahassee, for appellant/cross-appellee.
Matthew S. Nugent, West Palm Beach, for appellee/cross-appellant.
WARNER, Judge.
The appellant husband seeks review of the trial court's equitable distribution plan, rehabilitative alimony award to the appellee wife, denial of attorneys' fees, and allowance of the wife's petition for modification of said alimony. The wife cross-appeals, also seeking review of the equitable distribution plan and alleging that the trial court erred in failing to award permanent alimony to her. The main issue of contention is the court's determination that the husband's future income and the income from the wife's inherited property constitute marital assets. We hold they are not and reverse the equitable distribution plan.
The parties were married for twenty-four years and have four children who have all reached majority. The husband is a successful attorney while the wife has a teaching degree but has never consistently worked outside of the home. In addition to the husband's salary, the parties also relied on income from timber sales from the wife's inherited timberland in Virginia. Nevertheless, the parties consistently lived above their means and incurred significant debt.
The trial court determined that the parties had two marital assets which were subject to equitable distribution: the husband's ability to earn approximately $135,000 per year and the wife's future income from unharvested timberland which she had inherited prior to the marriage, an interest the trial court valued at $873,107.50. The trial court found that the parties had relied on these two sources of income throughout their marriage, and as such, characterized these "assets" as marital property. This was error.
The husband's future earning ability is not an "asset" for purposes of equitable distribution. See Hallman v. Hallman, 575 So.2d 738, 739 (Fla. 5th DCA 1991); Severs v. Severs, 426 So.2d 992, 994 (Fla. 5th DCA 1983). Pursuant to section 61.075(5)(a)(1), Florida Statutes (1991), "marital" assets are only those that are acquired "during the marriage." "[M]arital property rights cannot inure in property acquired after a judgment of dissolution of marriage." Reynolds v. Reynolds, 615 So.2d 243, 244 (Fla. 3d DCA 1993)(inclusion of post-dissolution income erroneous as a matter of law). Since the husband's future salary could not be characterized as accruing "during" the marriage, as a matter of law, the wife has no right to a portion of it in equitable distribution.
In evaluating the nature of the wife's inherited timberland and the value of future timber harvests and sales, the trial court bifurcated its analysis into two parts: the nature of the timberland itself and the characterization of the timber thereon. The wife had inherited some tracts individually and others in joint tenancy with her brother, who *797 managed all of the timberland. The trial court found that the wife's interest in the timberland was nonmarital, while the future income stream from the sale of the timber was a marital asset.
Regarding the characterization of the timber income, the trial court classified this as a marital asset based on its belief that the parties' reliance on the income received during their marriage changed the nature of the income accruing in the future, after the marriage. Section 61.075(5)(b)3 states that nonmarital assets include "all income derived from nonmarital assets during the marriage unless the income was treated, used or relied upon by the parties as a marital asset." (emphasis added). See Boyett v. Boyett, 703 So.2d 451, 451 n. 1 (Fla.1997). Even if the use of the nonmarital income for marital purposes during the marriage converts it to marital income, the future stream of income from a nonmarital asset is not a marital asset after the marriage is dissolved. As we stated above, in regard to the husband's future salary, pursuant to section 61.075(5)(a)(1), the only assets subject to equitable distribution are those acquired "during the marriage." As such, the wife's future timber income is nonmarital, and the husband is not entitled to any portion of it. See also Cobb v. Cobb, 107 N.C.App. 382, 420 S.E.2d 212 (1992)(future timber income not vested property right).
The trial court characterized the timberland as nonmarital since the wife inherited the property prior to the marriage. See § 61.075(5)(b); Macaluso v. Macaluso, 523 So.2d 615, 617 (Fla. 2d DCA 1988)(property was nonmarital where family business established and transferred to husband prior to marriage). The parties expended no significant marital labor which might have contributed to the vast appreciation of the timberland over the course of the marriage. This case is analogous to our recent decision in Oxley v. Oxley, 695 So.2d 364, 368 (Fla. 4th DCA), rev. dismissed, 705 So.2d 9 (Fla.1997), in which we held that increased value in nonmarital assets, due to the efforts and independent decision making of third parties, constituted nonmarital property and was not subject to equitable distribution. In the present case, the trial court found that the wife's brother essentially managed the property and made all of the pertinent investment decisions, including when to harvest, sell and/or reseed the timberland. Thus, she expended no marital labor on the land.
The husband argues that even if the timberland was inherited, the fact that he contributed to the payment of property taxes and seedlings should change the nature of the asset for purposes of equitable distribution. The husband introduced a series of cancelled checks, written both from his personal account and from the parties' joint account, for real estate taxes, timber replanting, and seedlings. In all, these checks totalled approximately $16,790 for taxes, $500 for seedlings, and $821 for timber replanting. Other checks were written to the wife's brother, but they do not indicate the purpose for which they were written. However, the husband testified that over their twenty-four year marriage he paid $70,000 in real estate taxes.
Section 61.075(5)(a)2 includes as marital assets "[t]he enhancement in value and appreciation of nonmarital assets resulting either from the efforts of either party or from the contribution thereto or the expenditure thereon of marital funds ...." (emphasis added). "Absent a showing that either marital funds, assets, or the work efforts of one or both spouses contributed to the enhanced value of the asset, the appreciated value of one spouse's nonmarital asset occurring during the marriage is not subject to equitable distribution." Oldham v. Oldham, 683 So.2d 579, 580 (Fla. 4th DCA 1996)(emphasis added). Thus, it is not just the expenditure of marital funds in relation to the nonmarital asset but how those expenditures enhance the value of the asset. Routine maintenance expenses may or may not enhance the value of a nonmarital asset. A spouse may expend labor on a nonmarital asset by cutting the grass regularly, but that effort might not result in an enhancement in value. Therefore, the trial court should consider whether the marital funds or labor expended on a nonmarital asset resulted in its appreciation. It is only where appreciation occurs as a result of the marital effort or funds that the *798 enhancement of nonmarital property may be considered a marital asset. Although payment of property taxes in connection with the payment of a mortgage or improvements to land may transform non-marital property to marital property, as in Oldham, in this case the trial court could in its discretion determine that the payment of property taxes alone did not turn the appreciation of the timberland into a marital asset.
This does not leave a spouse who has contributed to a non-marital property of the other spouse without recourse. Where one spouse has paid significant expenses on the property of another spouse, even if they do not enhance the value of the property, the trial court can consider those payments in determining that there is a justification for an unequal distribution of marital assets. See § 61.075(1)(g)(providing that the trial court can determine whether an unequal distribution of marital assets is justified based on factors including "[t]he contribution of each spouse to the acquisition, enhancement, and production of income or the improvement of, or the incurring of liabilities to, both the marital assets and the nonmarital assets of the parties")(emphasis added). For instance, in Cole v. Roberts, 661 So.2d 370, 372 (Fla. 4th DCA 1995), we followed Straley v. Frank, 612 So.2d 610, 612 (Fla. 2d DCA 1992), modified on other grounds, 650 So.2d 628 (Fla. 2d DCA 1994), and determined that the trial court should have reduced the husband's share of the distribution of marital assets by one-half of the marital funds contributed towards reducing the mortgage debt on the husband's nonmarital property. Thus, section 61.075(1)(g) gives the court some flexibility to compensate a spouse for contributions to nonmarital property, where it is not appropriate for the court to identify the asset as a marital asset.
While seedlings and timber replanting may enhance the value of the property, it could also be considered an expense to generate income, since the product of the property was timber. The income generated by timber sales far exceeded the expenses, including property taxes, paid by the husband or the parties together, as even the husband admitted. That net income was invested in the parties' home and expenses for their children so that the husband also received its benefit. The court could treat the expenses of seedlings and replanting as expenses necessary to generate income, rather than enhancements in the value of property, as the income was generated by cutting the growing timber. Thus, considering section 61.075(g), the trial court could determine that the contributions to the production of income were offset by the income received and no justification existed for any unequal distribution of marital assets because of it.[1] However, because the trial court treated the future income from the property as a marital asset and did not address the payment of expenses of the property, we reverse for the trial court to reconsider this issue.
The parties also attack the trial court's treatment of liabilities in its equitable distribution scheme. The lower court ordered the parties to pay equal amounts towards the maintenance and repair of the marital home, back taxes owed to the IRS, and any encumbrances on marital assets. On appeal, the parties both contest the equal distribution of the back taxes liability. The wife asserts that she filed separate income tax returns for the years at issue and should not be obligated to pay the remaining amount owing which primarily consisted of the taxes on the husband's salary for the three years. As the trial court noted, "the monies earned by the Husband were used to support the family unit [during the dissolution proceeding], and the Husband should not be punished because he is the only one who generates income."
Requiring the parties to be jointly obligated for taxes accruing before the final judgment of dissolution was within the trial court's discretion and did not constitute an abuse of discretion. See Hair v. Hair, 402 So.2d 1201, 1203-04 (Fla. 5th DCA 1981). The wife's contention that the husband is more capable of paying the taxes, along with *799 her repeated attempts to characterize her timber income as completely speculative, are unconvincing. Her assertions contradict the timber appraisers' testimony at trial, which the trial court accepted. The appraisers testified that the wife could sell a portion, if not all, of the timber and receive a significant profit. We affirm the trial court's order as to the marital liabilities. Thus, based on the trial court's erroneous characterization of the husband's future earnings and the wife's future timber income, we reverse and remand for the formulation of a new equitable distribution scheme consistent with the principles set forth in this opinion.
The trial court awarded the wife $1,800 per month as rehabilitative alimony for two and one-half years. The husband contests the alimony, arguing that the wife is capable of self-support given her rather substantial future timber income. The trial court found that the timber had a certain illiquidity and could not provide the wife with income until its future sale. We find no abuse of discretion in the rehabilitative alimony award to enable the wife to "bridge the gap" between married and unmarried life, given the immediate illiquidity of her assets. See Kanouse v. Kanouse, 549 So.2d 1035, 1036 (Fla. 4th DCA 1989); Shea v. Shea, 572 So.2d 558, 559-60 (Fla. 1st DCA 1990).
We find no error in the trial court's denial of the husband's motion for attorneys' fees, based on the relatively equal financial footing of the parties after the dissolution. See Keaton v. Keaton, 634 So.2d 798, 799 (Fla. 4th DCA 1994). The trial court found that "both parties are in dire straits." Although the husband's earning capacity is significantly greater than the wife's, the wife's more significant income-producing nonmarital assets balance the equation. See Kendall v. Kendall, 677 So.2d 48, 49 (Fla. 4th DCA 1996). Where one party has both greatly superior income-producing abilities and superior income-producing assets, an award to the less financially secure spouse may be appropriate. See Oldham, 683 So.2d at 581. That situation is not present here since neither party has both superior assets and income-producing capabilities. Despite the husband's assertions to the contrary, his income is not "exhausted on obligations imposed by the final judgment leaving him with practically no money to support himself...." Gentile v. Gentile, 565 So.2d 820, 822 (Fla. 4th DCA 1990). We affirm the trial court's denial of attorneys' fees.
The husband also argued for contribution from the wife towards the appraisal costs of the wife's timberland (approximately $14,000). Both parties relied on the appraiser's work at trial. Where the parties are left in relatively equal financial positions, they should share any appraisal costs. See Boyett v. Boyett, 683 So.2d 1140, 1142-43 (Fla. 5th DCA 1996), approved, 703 So.2d 451 (Fla. 1997). On remand, we direct that the parties share these costs.
We find no merit in the other arguments raised on appeal, and affirm as to those issues.
Affirmed in part; reversed in part and remanded for further proceedings consistent with this opinion.
KLEIN, J., and PARIENTE, BARBARA J., Associate Judge, concur.
NOTES
[1] If on remand the trial court finds justification for an unequal distribution of marital assets and liabilities, yet there were no marital assets, the trial court could assign to the wife more of the marital debt to offset the expenses paid during the marriage.